# Horn's Estate.

*Will—Trust—Trustee—Remarriage of widow.*

Testator by his will devised his homestead to his wife. He gave the remainder of his estate to trustees, and directed that a portion of the income should be paid to his wife, and the remainder should be used to pay off a mortgage. After the mortgage was paid off four-fifths of the income was to be paid to his wife for the support of herself and testator's daughter, and one-fifth to his brother; "said trust to continue during the natural life of my wife, and said money to be paid to her as long as she remains my widow, in case of her marrying, then she is to get the

same interest therein as she would have had in my real estate had I died intestate." The widow elected to take under the will, and subsequently remarried. She then claimed the right to take her interest in the real estate as widow under the intestate laws as if no trust had been created. *Held*, that the trust continued during her natural life, and that upon her remarriage she was entitled to receive one-third of the trust income, instead of four-fifths as before.

Argued Oct. 21, 1908. Appeal, No. 106, Oct. T., 1908, by Lizzie Hoffman, from decree of O. C. Allegheny Co., Nov. T., 1907, No. 6, dismissing petition in estate of Michael Horn, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Petition for partition.

The controversy turned upon the construction of the will of Michael Horn, deceased, which was as follows:

" First: I give, devise and bequeath to the Safe Deposit & Trust Company of Pittsburg, and Alexander K. Stevenson, as executors and Trustee of my entire estate in Trust. That they or the survivors of them will fully carry out all the provisions of this my Will.

"I direct that they shall collect the entire income from my Estate, and out of said income pay monthly to my beloved wife Lizzie Horn, the sum of One Hundred ($100.00) Dollars, so long as there shall remain any incumbrance or indebtedness against my real estate. The balance of the income, over and above, the said One hundred ($100.00) Dollars, is to be used to pay off the Mortgage upon said property and the taxes, insurance and repairs, and when said property is entirely free from debt, then I direct that the net rents shall be divided as follows:

"Four fifths (⅘) to my beloved wife and One fifth (⅕) to my brother Peter Horn, until my real estate is sold. I direct that my real estate shall not be sold excepting under the consent and at the discretion of the Orphans' Court of Allegheny County. Said Court to be the judges as to when and as to price and terms of sale, but said order shall not be made unless circumstances shall accrue making it necessary in the opinion of

the said court, until the property is entirely clear from all incumbrances. Should the property remain in the hands of said Trust during the entire natural life of my wife, then she is to receive the Four fifths ($\frac{4}{5}$) of the rent, to be used for her support and for the maintenance and proper and thorough education of my daughter Irene.

"In case of the sale of said property my said Trustee or survivor shall invest the money in first Bonds and Mortgages, and the interest thereon shall be paid as aforesaid in lieu of rent.

"After the decease of my wife I direct that my said Trustee shall pay as aforesaid the rent or income, provided for my wife, to the Guardian of my child Irene, should she not be of age, if she is of age the same shall be paid to her. Said trust to continue during the natural life of my wife and said money to be paid to her so long as she remains my widow, in case of her marrying, then she is to get the same interest therein as she would have had in my real estate had I died intestate.

"In case my wife should die without a lawful issue, then I give and devise my entire estate to my brother Peter Horn and to his children, share and share alike.

"It being understood that after paying all debts and all encumbrances on the property that my brother Peter Horn is to have One fifth ($\frac{1}{5}$) be it in real estate or rents or income.

"Second: It is not intended hereby to convey to my said Executors the Homestead in which I now reside nor the lot that I own in McKeesport, situate on Scotch Street, in the 7th Ward. The Trust only relates to the property that I own that fronts on Fifth Avenue and running through to Jerome Street. Being the same devised to me by my Uncle Martin Horn. The said two mentioned properties, to wit, the Homestead and vacant lot in the 7th Ward. I give devise and bequeath to my beloved wife Lizzie absolutely to her, her heirs and assigns forever."

The widow claimed that upon her remarriage the trust ended, and that she was entitled to one-third of the realty for life free from the trust. The trustees filed an answer affirming the continuance of the trust. The majority of the court in an opinion by OVER, J. (HAWKINS, P. J., dissenting), dismissed the petition.

*Error assigned* was the decree of the court dismissing the petition.

*W. B. Rodgers,* with him *W. E. Newlin,* for appellant.

*James R. Sterrett,* of *Patterson, Sterrett & Acheson,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 4, 1909:

At the death of Michael Horn, the testator, the legal title to the trust estate vested in the trustees who have performed the active duties connected with the administration of the trust for a period of ten years. The petitioner, a widow of decedent, elected to take under the will and thereby waived her right to take under the intestate laws and committed herself to the testamentary disposition of the property, including the trust estate, made by her husband. Having taken under the will the absolute title to the homestead and vacant lot, greatly to her benefit, she should not now have an election to take such an interest in the real estate set aside in the trust as would be given her under the intestate laws because it happens to be to her advantage to do so, unless such right clearly exists under the terms of the will. This would be playing fast and loose with the testator's scheme of distribution and would necessarily disarrange his plan for the protection of the other objects of his bounty. The trust was "to continue during the natural life of my wife," not during widowhood, but during the natural life of a person in being, and it certainly was within the legal rights of the testator to create a trust for the life of a person in being if he chose to do so: Spring's Estate, 216 Pa. 529. The widow is still living and therefore the trust has not terminated by the expiration of the period for which it was created. Has it terminated for any other reason? It is contended, and this is the pinch of the case, that the remarriage of the widow has had the effect of terminating the trust and gave the widow the right to take her interest in the real estate included in the trust, as if no trust existed, and as if it were real estate and she to take her interest therein as under the intestate laws. This position is asserted under that clause of the will which pro-

vides "in the case of her marrying, then she is to get the same interest therein, as she would have had in my real estate had I died intestate." If this clause stood alone it would be difficult to read and understand it in any other way than is contended for by the learned counsel for appellant. However, it must be read and understood in connection with the paragraph in which it occurs, and with reference to the whole will of which it is a part. It occurs in the paragraph relating to the trust estate, and presumably relates to the trust. When the testator provided that his widow in the event of her remarriage should get the same "interest therein" as she would have under the intestate laws, he evidently meant "interest" in the trust estate as such, and not in the real estate as if no trust had been created. The testator set this particular property aside in trust in order to protect the three objects of his bounty, his wife, his daughter and his brother. There was a mortgage upon the property, and he did not wish it sold for the payment of this indebtedness. He no doubt believed that the rents from the real estate set aside in the trust would be sufficient to pay his wife $100 per month, provide for taxes, insurance and repairs and finally pay off the mortgage debt. When the time arrived that the mortgage should be paid off, the wife, so long as she remained his widow, was to receive four-fifths of the income which was to be used for her support and for the maintenance and education of his daughter, and his brother was to receive one-fifth. Then there is the provision as to the sale at the discretion of the orphans' court of Allegheny county. All of these things were predicated upon the fact of his widow remaining unmarried. Then there is the alternative provision that if his widow should remarry, she was no longer to receive the four-fifths of the income derived from the trust estate, but was to receive "the same interest therein" as she would have had under the intestate laws. We cannot believe that the testator intended to give her a larger interest in his estate in the event of her remarriage than if she had remained his widow, and this would be the result if the contention of the appellant prevails. We therefore agree with the opinion of the learned court below wherein it was said: "The testator does not give her in case of

remarriage the same estate she would have taken in his real estate had he died intestate; but provides that 'then she is to get the same interest therein,' referring evidently to the trust estate, 'as she would have had in my real estate had I died intestate.' The obvious purpose of this clause being to reduce her share of the income from four-fifths to one-third. Whilst the word 'interest' in some connections includes title, in others it includes advantages less than title, Anderson's Law Dictionary, 562, and it seems here to be used in its restricted sense." Taking into consideration the intention of the testator as gathered from the four corners of the will; the paragraph relating to the trust estate in which the clause referring to the interest the widow shall take in case of remarriage; the general scheme for the disposition of the testator's property; the plan for the protection of his daughter and brother, the conclusion is irresistible that the testator did not intend the trust to terminate upon the remarriage of his widow, but that he did mean to cut down her interest in or her part or portion of the income derived from the same from four-fifths to one-third.

Decree affirmed, costs to be paid out of the estate.